Requestor: Hon. Richard F. Corbisiero, Chairman NYS Racing and Wagering Board 400 Broome Street New York, N Y 10013
Written by: G. Oliver Koppell, Attorney General
You have asked whether the provisions of Correction Law Article 23 apply to the certification and licensing of gaming employees at casinos operated pursuant to the Nation-State Compacts between the State of New York and the Oneida Nation of New York (the "Oneida Compact") and between the State and the St. Regis Mohawk Tribe (the "St. Regis Compact"). For the reasons set forth below, we conclude that Article 23 is not applicable to certification or licensing procedures under the compacts.
Correction Law Article 23 governs the issuance and effect of certificates of relief from disabilities and certificates of good conduct. It provides that
 "A certificate of relief from disabilities may be granted as provided in this article to relieve an eligible offender of any forfeiture or disability, or to remove any bar to his employment, automatically imposed by law by reason of his conviction of the crime or of the offense specified therein."
Correction Law § 701(1). "Eligible offender" is defined as "a person who has been convicted of a crime or of an offense, but who has not been convicted more than once of a felony". Correction Law § 700(1)(a). The statute also states:
 "a certificate of relief from disabilities shall not, however, in any way prevent any judicial, administrative, licensing or other body, board or authority from relying upon the conviction specified therein as the basis for the exercise of its discretionary power to suspend, revoke, refuse to issue or refuse to renew any license, permit or other authority or privilege." Correction Law § 701(3).
Thus, even if the provisions of Article 23 were found generally to apply to the licensing procedures established in the compacts, the existence of a certificate would not necessarily prevent a licensing body from taking a conviction into account in exercising any discretionary licensing power. A certificate of relief from disabilities issued pursuant to Article 23 simply prevents the specified conviction from acting as an automatic bar to receiving a license. See 1991 Op Atty Gen No. 91-F10;Matter of Frederick v Civil Service Commission, 175 A.D.2d 428 (3d Dept 1991).
The Indian Gaming Regulatory Act, 25 U.S.C. § 2701, et seq., (the "Act") was enacted by Congress in 1988 in recognition that existing Federal law did not provide clear standards for the conduct of gaming on Indian lands. 25 U.S.C. § 2701(3). The Act was intended to provide a statutory basis for the operation of gaming by Indian tribes and for regulation of gaming by tribes, the Federal government and the States.25 U.S.C. § 2702. The Act defines three classes of gaming and provides that class III gaming activities are lawful on Indian lands only if such activities are (1) authorized by an ordinance or resolution adopted by the tribe's governing body and approved by the Chairman of the National Indian Gaming Commission; (2) located in a State that permits such gaming; and (3) conducted in conformance with a Tribal-State compact. 25 U.S.C. § 2710(d)(1). A Tribal-State compact takes effect only upon approval by the Secretary of the Interior.25 U.S.C. § 2710(d)(3)(B). The Act does not specify particular provisions that must appear in such compacts, but does state that:
 "Any Tribal-State compact negotiated under subparagraph (A) may include provisions relating to —
 (i) the application of criminal and civil laws and regulations of the Indian tribe or the State, that are directly related to, and necessary for, the licensing and regulation of such activity . . ."
25 U.S.C. § 2710(d)(3)(C) provided that
 "Nothing in this subsection shall impair the right of an Indian tribe to regulate class III gaming on its Indian lands concurrently with the State, except to the extent that such regulation is inconsistent with, or less stringent than, the State laws and regulations made applicable by any Tribal-State compact entered into by the Indian tribe under paragraph (3) that is in effect."
25 U.S.C. § 2710(d)(5). The Act's legislative history indicates that Congress chose to create a framework that would permit state regulation of class III gaming through a negotiated compact. See, Report of Senate Indian Affairs Committee, reprinted in 1988 US Code, Cong. Admin. News 3071.
The Oneida and St. Regis Compacts were negotiated pursuant to the Act. They contain detailed licensing procedures and expressly address the effect various criminal convictions are to have upon an individual's application for a license. Neither compact includes a provision making Article 23 applicable or addressing the effect an applicant's certificate of relief from disabilities is to have upon an application.
Section 6(a) of the Oneida Compact provides that no person may commence or continue employment as a gaming employee unless he or she has a valid license issued by the Oneida Indian Nation of New York Gaming Commission ("Commission"). Applicants may not be licensed unless they first are certified by the Racing and Wagering Board (the "Board"). Prospective employees submit applications to the Nation's gaming operation which forwards them to the Board. Id., § 6(b). The Board arranges for fingerprint-based searches of criminal history records by the Division of Criminal Justice Services and the Federal Bureau of Investigation. Applicants also undergo background checks conducted by the State Police. The results of these investigations are reported to the Board. Id.,
§ 6(d).
Section 6(f) of the Oneida Compact grants the Board discretion in certifying applicants. It provides:
 "1. The Board shall issue a gaming employee certification to any applicant unless he or she meets any of the criteria set forth below. The Board may deny certification to any applicant who:
a. is under the age of 18;
b. has been convicted of a felony;
 c. has been convicted of any form of book-making or other form of illegal gaming;
 d. has been convicted of any fraud or material misrepresentation in connection with gaming;
 e. has been found through an administrative determination to have violated any law, rule or regulation relating to gaming for which termination of employment or revocation of license might be imposed.
 f. has otherwise been determined to be a person whose prior activities, criminal record, if any, or reputation, habits and associations pose a threat to the effective regulation of gaming or create or enhance the chances of unfair or illegal practices, methods, and activities in the conduct of the gaming permitted pursuant to this Compact; or
 g. has failed to provide any information reasonably required to investigate the applicant for a gaming employee license or to reveal any fact material to such application, or has furnished any information which is untrue or misleading in connection with such application.
 2. The board shall send appropriate written notice of certification or denial of certification to the Commission and, in the case of a denial, the notice of denial shall be sent to the applicant."
The Oneida Compact specifies that the Commission must deny a license to any applicant who is denied certification by the Board. Id., § 6(e)(2). The Compact also states that "[t]he commission, in its sole discretion, may issue or refuse to issue a license to any applicant who has received a certification from the Board." Id., § 6(h). We note that Correction Law, Article 23 expressly states that a certificate of relief from disabilities shall not prevent a licensing body from relying on the conviction specified in the certificate in the exercise of its discretionary licensing power. Thus, with regard to the Oneida Compact, this opinion will have no practical effect on the exercise of discretion by the Board and the Commission.
The St. Regis Compact does not include a two-stage certification and licensing procedure like that established by the Oneida Compact. It simply provides that no one may work as a gaming employee without a license issued by the Board in accord with the Compact's requirements.Id., § 5(a). Background and fingerprint checks are required. Id.,
§ 5(d). The St. Regis Compact specifies that the Board must deny a gaming employee license to any applicant who meets listed criteria. Id.,
§ 5(f)(1). The criteria that mandate denial of a license under the St. Regis Compact are the same as those listed in section 6(f) of the Oneida Compact. Id. § 5(f)(1)(a)-(g). Under the terms of the St. Regis Compact, the Board may not exercise discretion in licensing. Convictions of the type specified in the compact automatically bar the applicant from receiving a license.
The Federal Act authorizes the inclusion in compacts of provisions of State law necessary to license and regulate gaming. Federal law does not require incorporation into compacts of any relevant provision of State law. Thus, the negotiators were permitted, but were not required to include in the compacts references to certificates of relief from disabilities. We believe the compacts set out in detail the factors that may disqualify an applicant for certification. There is no reference to Article 23 or to certificates of relief from disabilities. We also note that the General Municipal Law provisions that govern licenses to conduct games of chance expressly state that only persons who have never been convicted of a crime, or if convicted have received a pardon, a certificate of relief from disabilities or a certificate of good conduct, can be licensed. General Municipal Law § 191. Seealso, GML §§ 189-a, 195-c, 481. Clearly, the compact drafters could have included similar language if they intended Article 23 to apply.
Both compacts make express reference to other provisions of State law that the parties wished to have apply to gaming operations under the compact. For example, the St. Regis Compact provides that tribal law enforcement officers, under certain circumstances, have concurrent authority with State law enforcement officers to enforce State criminal law. The St. Regis Compact also states that no gaming employee license may be suspended or revoked and no license renewal denied except after notice and hearing in accord with the State Administrative Procedure Act, and that such actions are reviewable in State Supreme Court under Article 78 of the Civil Practice Law and Rules. The Compact also includes a section on State regulatory standards which specifies that tribal ordinances and regulations regarding health and safety may be no less rigorous than those imposed by State laws and regulations governing building, fire and sanitary standards for public facilities. The Oneida Compact includes similar language making specific provisions of State law applicable. It appears, therefore, that the drafters did not intend Article 23 to apply.
We conclude that Correction Law Article 23 does not apply to certification or licensing procedures under the St. Regis and Oneida Compacts.